No. 23-10461

UNITED STATES COURT OF APPEALS
FOR THE ELEVENTH CIRCUIT

---

**In re: SKA CAPITAL, LLC., et al.**

---

Appeal from the United States District Court
for the Southern District of Alabama
(No. 1-22-CV-00263-KD-B)

---

**BRIEF OF APPELLEE MOBILE NURSING OPERATIONS, LLC**

---

MCDOWELL KNIGHT
ROEDDER & SLEDGE, LLC
11 North Water St., Ste. 13290
Mobile, Alabama 36602
Archibald T. Reeves, IV, Esq.
Ransome R. Hare, Esq.

JAMES P. PEWITT, LLC
2 20th Street North, Ste. 925
Birmingham, Alabama 35203
James P. Pewitt, Esq.

*Counsel for Appellee Mobile
Nursing Operations, LLC*

**Appeal No. 23-10461-B**
**In re: SKA Capital, LLC, et al.**

## <u>CERTIFICATE OF INTERESTED PERSONS</u>
## <u>AND CORPORATE DISCLOSURE STATEMENT</u>

Pursuant to Federal Rule of Appellate Procedure 26.1 and 11th Circuit Rules 26.1-1 through 26.1-3, Appellee, Mobile Nursing Operations, LLC, hereby provide a complete list of all trial judges, attorneys, persons, associations of persons, firms, partnerships, or corporations that have an interest in the outcome of the particular case or appeal, including subsidiaries, conglomerates, affiliates, parent corporations, any publicly held corporation that owns 10% or more of the party's stock, and other identifiable legal entities related to a party:

Azalea Health and Rehab, LLC

Azalea Opco Holdings, LLC

Azalea Propco, LLC

Bolt, Weathers, counsel for Appellants

Butler, M. Warren, counsel for Appellants

DuBose, Kristi K. Judge, United States District Court for the Southern
    District of Alabama

Hare, Ransome R., counsel for Appellee

James P. Pewitt, LLC

Kopelowitz, Shaul

Lerner, Shalom

McDowell Knight Roedder & Sledge, L.LC.

Mobile Nursing Operations, LLC, its members are as follows:

- Management Group Seven, LLC, members are as follows:

    o Addington, Leonard

    o B & J Limited Partnership

        ▪ Poston, Albert D.

        ▪ Poston, Bryan Poston, Jr.

        ▪ Poston, Larry

    o Davis, Craig

    o Davis, Eric

    o Sullivan, Marjorie

    o JKS, LLC

        ▪ Sanders, Jack Sanders

        ▪ Sanders, Karlie

        ▪ Sanders, Sidney

    o Jones, Calvin

    o Revocable Trust of Roy Bush Bridges and Judy Kay Winn Bridges

    o Stevens, Vikki Davis

- o   Suire, Russell

- o   The Vernice C. Wright Irrevocable Trust

- o   Thomas, Fred

- SHM Partners, LLC, members are as follows:

- o   Davis, John L.

- o   Davis, Michael Reese

- o   Davis, Jr., Thomas J.

- o   SRB Investments, LLC

    - ▪   Broussard, Scott

Pewitt, James P., counsel for Appellee

Reeves, Archibald T., IV, counsel for Appellee

SKA Capital, LLC

SKA Holdco, LLC

SKA Propco, LLC

SLA Holdco, LLC

SLA Propco, LLC

Starnes Davis Florie, LLP

Whillock, Amber M., counsel for Appellants

**CORPORATE DISCLOSURE STATEMENT**

Pursuant to Federal Rule of Civil Procedure 26.1 and Eleventh Circuit Rule 26.1-1, Mobile Nursing Operations, LLC certifies that there are no parents, subsidiaries, and/or affiliates of Appellees that have issued shares or debt securities to the public.

## <u>STATEMENT REGARDING ORAL ARGUMENT</u>

Appellee, Mobile Nursing Operations, LLC ("MNO"), does not believe that oral argument is necessary.  The law to apply is clear and settled, and the relevant facts are straightforward in the record.

## TABLE OF CONTENTS

CERTIFICATE OF INTERESTED PERSONS AND CORPORATE
DISCLOSURE STATEMENT ............................................................................. C1

STATEMENT REGARDING ORAL ARGUMENT ................................................. i

TABLE OF CONTENTS............................................................................... ii

TABLE OF AUTHORITIES .......................................................................... iv

JURISDICTIONAL STATEMENT ........................................................................ 1

STATEMENT OF THE ISSUES........................................................................... 2

STATEMENT OF THE CASE .............................................................................. 3

SUMMARY OF THE ARGUMENT ................................................................... 15

ARGUMENT .................................................................................................... 18

    I.    The Trial Court Properly Denied Intervention of Right ..................... 18

        A.    MNO does not challenge the Timeliness of
             Intervenors' Application to Intervene ......................................... 18

        B.    The Intervenors Have No Protectable, Legal Interest in
             the Action Against Kopelowitz .................................................. 18

        C.    The Intervenors' Ability to Protect Their Interests is
             Not Impaired ............................................................................. 26

        D.    Kopelowitz Can Adequately Protect the Intervenors'
             Interests .................................................................................... 30

    II.    The Trial Court Properly Denied Permissive Intervention ................ 32

        A.    There are No Common Questions of Law and Fact
             Sufficient to Warrant Intervention ............................................ 32

        B.    Intervention Will Unduly Prejudice and Delay the
             Adjudication of the Rights of the Parties to the Action ............ 34

CONCLUSION .................................................................................................. 35

CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME
LIMITATIONS, TYPEFACE REQUIREMENTS, AND TYPE STYLE
REQUIREMENTS ................................................................................................. 37

CERTIFICATE OF SERVICE ............................................................................... 39

## TABLE OF AUTHORITIES

**Cases**

*AAL High Yield Bond Fund v. Deloitte & Touche LLP*,
361 F.3d 1305 (11th Cir. 2004)......................................................23

*Acceptance Indemn. Ins. Co. v. Southeastern Forge, Inc.*,
209 F.R.D. 697 (M.D. Ga. 2002).....................................................24

*Ageless Foundation, Inc. v. Quincy Investments, Corp.*,
2006 WL 8432667 (S.D. Fla. Aug. 15, 2006) ...............................33

*Amason & Assocs., Inc. v. Columbus Land Dev., LLC*,
2014 WL 467509 (N.D. Ala. Feb 5, 2014) .....................................27

*Atlantis Dev. Corp. v. United States*,
379 F.2d 818 (5th Cir. 1967) ..........................................................29

*Branch Banking & Tr. Co. v. Amac Three, LLC*,
2014 U.S. Dist. LEXIS 203032, 2014 WL 12737625
(N.D. Ga. Jan. 24, 2014) .................................................................26

*Branch Banking & Tr. Co. v. Broaderip*,
2011 U.S. dist. LEXIS 89652, 2011 WL 3511774
(S.D. Ala. Aug. 11, 2011) ...............................................................31

*Brennan v. N.Y. City Bd. Of Ed.*,
260 F.3d 123 (2nd Cir. 2001)..........................................................23

*Buckley Towers Condominium, Inc. v. QBE Ins. Corp.*,
2008 WL 11318164 (S.D. Fla. Nov. 4, 2018) ...........................33, 34

*Caballero v. Ejercito de Liberacion Nacional*,
2019 WL 11505371 (S.D. Fla. Jun. 27, 2019)...............................33

*Chiles v. Thornburgh*,
865 F.2d 1197 (11th Cir. 1989).......................................................29

*Ciba Specialty Chemicals Corp. v. Tensaw Land & Timber Co.*,
233 F.R.D. 622 (S.D. Ala. 2005) .......................................................... 29

*Crawford v. Chattanooga Savings Bank*,
203 Ala. 133, 82 So. 163 (1919) .......................................................... 19

*CSpan Fin., LLC v. Blane*,
2012 WL 3639051 (S.D. Fla. Aug. 23, 2012) ...................................... 24

*CSX Transp., Inc. v. Georgia Pub. Serv. Comm'n*,
944 F. Supp. 1573 (N.D. Ga. 1996) .................................................... 29

*Ex parte Howell*,
447 So. 2d 661 (Ala. 1984) .................................................................. 28

*Gen. Elec. Bus. Fin. Servs., Inc. v. Silverman*,
2009 U.S. Dist. LEXIS 65739, 2009 WL 2371536
(N.D. Ill. Jul. 30, 2009) ................................................................... 9, 35

*Georgia v. United States Army Corps of Eng'rs*,
302 F.3d 1242  (11th Cir. 2002) .................................................... 20, 34

*Government Street Lumber Co. v. AmSouth Bank, N.A.*,
553 So. 2d 68  (Ala. 1989) ...................................... 20, 28, 30, 31

*Home Fed. Bank for Sav. v. Daly*,
1990 U.S. Dist. LEXIS 9210, 1990 WL 114728
(N.D. Ill. Jul. 26, 1990) .......................................................................... 9

*Lacroix v. Lee Cnty*,
No. 2:18-cv-143-FtM-38CM, (M.D. Fla. Jul. 29, 2018) ....................... 21

*Laube v. Campbell*,
215 F.R.D. 655  (M.D. Ala. Mar. 27, 2003) ........................................ 24

*Lloyd Noland Found., Inc. v. Tenet Healthcare Corp.*,
2001 U.S. Dist. LEXIS 28038, 2001 WL 37124708,
(N.D. Ala. Jun. 20, 2001) .................................................................... 30

*ManaSota-88, Inc. v. Tidwell*,
896 F.2d 1318  (11th Cir. 1990)....................................................................24

*Mt. Hawley Ins. Co. v. Sandy Lake Props., Inc.*,
425 F.3d 1308  (11th Cir. 2005)....................................................................23

*Ochs v. Hindman*,
984 F. Supp. 2d 903 (N.D. Ill. 2013)............................................................21

*Piggily Wiggly Alabama Distrib. Co., Inc. v. Bowman Co.*,
No. 2:12-CV-02079-JHE, 2014 WL 12749006 (N.D. Ala. Jun. 6, 2014) .............19, 27

*PR Leasing Co., Inc. v. Cowin Equipment Co., Inc.*,
611 So. 2d 232 (Ala. 1992)......................................................................19, 28

*Prince v. Huliau*,
No. 5:20-CV-0208-LCB,
2020 WL 3894009 (N.D. Ala. Jul. 10, 2020).........................................19, 27

*Purcell v. Bankatlantic Financial Corp.*,
85 F.3d 1508 (11th Cir. 1996) ..................................................................13, 32

*Regions Bank v. Stewart*,
No. 10-0145-M, 2010 WL 2496186 (S.D. Ala. Jun. 14, 2010) ...................21

*Shur-Gain Feed Div. William Davies Co., Inc. v. Huntsville Prod. Credit
Ass'n*,
372 So. 2d 1317 (Ala. Civ. App. 1979)........................................................19

*Stone v. First Union Corp.*,
371 F.3d 1305 (11th Cir. 2004)....................................................................29

*SunAmerica Corp. v. Sun Life Assurance Co. of Canada*,
77 F.3d 1325 (11th Cir. 1996).....................................................................14

*Typhoon Media Corp. v. CVS Pharmacy, Inc.*,
2013 WL 12090029 (M.D. Fla. Aug. 22, 2013) ..........................................23

*United States v. South Fla. Water Mgmt. Dist.*,
922 F.2d 704 (11th Cir. 1991).....................................................................20

*Worlds v. Department of Health and Rehabilitative Services, State of Fla.*,
929 F.2d 591 (11th Cir. 1991). .................................................................. 14, 32

**Statutes**

28 U.S.C. §1653 ..................................................................................... 1

**Rules**

Fed. R. Civ. P. 24 .................................................................................. 26

## <u>JURISDICTIONAL STATEMENT</u>

MNO does not dispute the jurisdictional statement by the Appellants, SKA Capital, LLC, Azalea Propco, LLC, and Azalea Health and Rehab, LLC (collectively referred to below as "Proposed Intervenors"). The district court granted MNO's Motion for Leave to Amend Complaint, filed by MNO pursuant to 28 U.S.C. §1653, seeking to address the concerns raised in this Court's Jurisdictional Questions. (Doc. 68). The Amended Complaint demonstrates complete diversity among the parties. (Doc. 69).

## <u>STATEMENT OF THE ISSUES</u>

I.    Whether the district court erred in denying the Proposed Intervenors' motion to intervene of right pursuant to Rule 24(a)(2) where the Proposed Intervenors seek to protect, if anything, a contingent and remote economic interest in contracts that are not even the subject of MNO's Complaint.

II.    Whether the district court committed a clear abuse of discretion in denying the Proposed Intervenors' motion for permissive intervention pursuant to Rule 24(b) when the Proposed Intervenors are not parties to the Guaranty at issue in the case and intervention would unduly prejudice MNO and delay adjudication of the rights of the existing parties.

## STATEMENT OF THE CASE

Statement of the Facts

MNO brought this action against the Defendant, Shaul Kopelowitz ("Kopelowitz"), for breach of a Payment and Performance Guaranty Agreement (referred to below as the "Guaranty"). Kopelowitz guaranteed the payment of a Promissory Note (or "Note") signed by one of the Proposed Intervenors, SKA Capital, LLC ("SKA").

As will be described below, SKA defaulted. It failed to make the payments of interest and principal required under the Note. MNO made written demand to both SKA and Kopelowitz, but both have failed and refused to pay. MNO then filed this action against Kopelowitz for breach of his Guaranty, a remedy expressly provided and permitted by the terms of the Guaranty. MNO seeks all sums due under the Note, plus interest at the default rate set out in the Note, attorney's fees and costs.

SKA provided the Note in connection with the purchase of a skilled nursing facility in Mobile, Alabama. On or about November 20, 2020, an entity known as Azalea Propco, LLC ("Azalea Propco"), and MNO signed a Contract of Sale (the "PSA"), pursuant to which Azalea Propco agreed to buy the facility.

After an extensive period of due diligence, on or about April 22, 2001, an affiliate and/or assignee of Azalea Propco – an entity known as "Azalea Health and Rehab, LLC" ("Azalea Health") – and MNO signed an Operations Transfer

3

Agreement (the "OTA") to close the sale. The OTA contained a section entitled "Indemnification," which set out certain narrowly defined indemnification obligations of MNO relating to the facility and the sale.

The purchase price for the facility was $11,000,000.00. The buyer(s) paid $9,000,000.00 in cash. SKA, which is presumably some sort of creditor, financed the remaining $2,000,000.00 for the buyers by executing the Note in favor of MNO. The Defendant, Kopelowitz, is the managing member of SKA.

The Note contains payment terms. (Doc. 1-1, PageID.8). Section 4.2 of the Note required that SKA pay interest to MNO monthly. (*Id.*) Those interest payments were approximately $8,290.00 per month. (Doc. 1-3, PageID.30). In addition, Section 4.2(a) of the Note required SKA to pay one-third of the outstanding principal amount of the Note every May 1. (Doc. 1-1, PageID.8). The first such principal payment, $666,666.66, was due on May 1, 2022. (*Id.*) The entire balance of the Note was due to be paid in full within three (3) years.

Section 4.6 of the Note provides in part as follows:

> ***[U]pon a final non-appealable judgment,*** [SKA] shall have the right to set-off against any amounts due under the Note with respect to all amounts due in connection with (a) [MNO's] obligations to indemnify [Azalea Propco, LLC] under the PSA, and (b) [MNO's] obligations to indemnify [Azalea Health & Rehab, LLC] under the OTA.

(*Id.*) (Emphasis added.) The Note further provides that SKA's set-off, if any, would be Azalea Propco's and Azalea Health's sole remedy in the event of MNO's breach of

4

an indemnity obligation.  Azalea Propco and Azalea Health signed a separate page of the Note, entitled "Joinder and Consent," for the limited purpose of acknowledging the provisions of Section 4.6.  Contrary to the repeated assertions of the Appellants, the Note did not "incorporate by reference" the PSA and the OTA. [1]

To induce MNO to accept the Note, Kopelowitz provided the Guaranty.  That Guaranty is absolute and unconditional.  Section 3 of the Note even states that "[a]ll obligations of Maker hereunder are unconditionally and unlimitedly guaranteed by Shaul Kopelowitz." (Doc. 1-1, PageID.8).  The Guaranty opens with a recital stating that it is absolute and unconditional.  (Doc. 1-2, PageID.17).  Section 1 of the Guaranty then states that Kopelowitz "hereby and absolutely and unconditionally guarantees to [MNO] the full, regular and punctual payment and performance" of the borrower's payment obligation.  (*Id.*)  Section 7 further states that the Guaranty is "continuing, absolute, irrevocable and unconditional under all circumstances."  (Doc. 1-2, PageID.21).

Section 13 of the Guaranty states as follows in bold, all capital letters:

**GUARANTORS FURTHER WAIVE AND AGREE NOT TO ASSERT: (A) ANY RIGHT TO REQUIRE LENDER TO PROCEED AGAINST BORROWER … OR TO PURSUE ANY OTHER REMEDY AVAILABLE TO LENDER, OR TO PURSUE ANY REMEDY IN ANY PARTICULAR ORDER OR MANNER.**

---

[1] The Guaranty also did not "incorporate by reference" the PSA or OTA.

(Doc. 1-2, PageID.23-24.)    In Section 15(a), Kopelowitz further agreed that "Guarantors hereby waive any requirement of joinder of all or any other of the parties hereto in any suit or proceeding to enforce the provisions hereof."  (Doc. 1-2, PageID.25.) (Emphasis added.)  Kopelowitz expressly waived the right to insist that the borrower (SKA) be joined or that MNO proceed first against the borrower or any other party.  In Section 13(E) of the Guaranty, Kopelowitz expressly waived the right to assert "any defense arising by reason of any disability or other defense of the borrower …."  (Doc. 1-2, PageID.24.)

Kopelowitz's obligation under his Guaranty is triggered upon "any Event of Default of Borrower under the Note."  (Doc. 1-2, PageID.25).  Section 6 of the Note defines "Events of Default."  (Doc 1-1, PageID.9).  It provides that a default occurs when "the Maker," SKA "fails to pay (a) the principal amount of the Loan when due; or (b) interest or any other amount when due and such failure continues for 5 days after written notice to the Maker."  (*Id.*)  Section 7 of the Note further provides that, upon the occurrence of an event of default, MNO may at its option declare the entire principal amount of the Note, together with all accrued interest thereon and all other amounts payable thereunder, immediately due and payable and/or exercise any or all its rights, powers or remedies under the Guaranty.  (*Id.*, PageID.10).

After the transaction closed in April 2021, SKA began making the interest payments due under the Note.  Beginning in November 2021, SKA stopped making

payments. (Doc. 1-3, PageID.30). In May 2022, it failed to make the principal payment due under the Note. (*Id.*)

On May 13, 2022, and in accordance with the terms of the Note, MNO declared the entire principal amount of the Note, together with all accrued interest thereon, immediately due and payable. MNO made written demand to SKA for payment. (Doc. 1-3, PageID.30). SKA, however, failed to comply or otherwise satisfy its obligations under the Note.

On May 27, 2022, MNO notified Kopelowitz in writing of SKA's default and demanded that he pay all sums due under the Note. (Doc. 1-4, PageID.32). Kopelowitz did not respond. On July 1, 2022, MNO filed this action.

On August 8, 2022, ***after MNO filed this action against Kopelowitz***, and ***almost a year and a half after closing***, Azalea Propco, LLC, and Azalea Health and Rehab, LLC, sent a letter to MNO, for the first time demanding indemnification for alleged claims relating to "water intrusion" and an allegedly unresolved Life Safety Code issue at the facility.

There is no dispute in this case that SKA failed to make the interest and principal payments described in the Note. Nor is there any dispute that Kopelowitz has failed to make those payments, or any other payment demanded by MNO, despite MNO's demand. Instead, Kopelowitz contends that the maker of the Note,

SKA, now believes it has a "set-off" and that he, therefore, has not breached any obligation under his Guaranty.

At the time of the Event of Default, neither Azalea Propco nor Azalea Health had obtained a "final non-appealable judgment" on any alleged indemnification obligation of MNO. Indeed, as mentioned above, Azalea Propco and Azalea Health did not even make a formal written demand for any indemnification or take any formal action to enforce any alleged indemnification obligation until *after* MNO filed this action against Kopelowitz. Indeed, to this day, there *still* is no final, non-appealable judgment for any indemnity obligation allegedly owed by MNO. Needless to say, there is no provision in the Note or Guaranty that says SKA or Kopelowitz can fail to pay as agreed if they merely suspect MNO may some day in the future owe an indemnity obligation to Azalea Propco or Azalea Health.

Procedural History

On July 1, 2022, MNO filed this action against Kopelowitz.

On August 11, 2022, Kopelowitz filed a motion to dismiss under Rule 12(b)(7) of the Federal Rules of Civil Procedure, arguing that MNO had failed to join SKA, Azalea Propco, and Azalea Health as necessary parties under Rule 19.

On November 18, 2022, SKA, Azalea Propco, and Azalea Health filed a lawsuit in the Circuit Court for Mobile County, Alabama, alleging for the first time a variety of legal claims against MNO, including breach of MNO's indemnity

8

obligations under the OTA.  The Proposed Intervenors also claim that the PSA and OTA were procured by fraud.

Also on November 18, 2022, Kopelowitz moved to stay this action in the federal district court.

On November 28, 2022, Magistrate Judge Sonja Bivins filed a Report and Recommendation on Kopelowitz's motion to dismiss.  In that report, Judge Bivins recommended that the motion be denied for several reasons.  First, she found that Kopelowitz had waived the right to insist that MNO proceed first against the borrower, SKA, or any other person and had waived the right to require joinder of other parties.  Noting that such waivers are enforceable under Alabama law, Judge Bivins wrote that "at least one federal district court has been presented with an argument virtually identical to Kopelowitz's and found it so 'meritless and frivolous' as to warrant sanctions under Federal Rule of Civil Procedure 11." (Doc. 26, PageID.215), citing *Home Fed. Bank for Sav. v. Daly*, 1990 U.S. Dist. LEXIS 9210, at *10-11, 1990 WL 114728, at *3-4 (N.D. Ill. Jul. 26, 1990); *see also Gen. Elec. Bus. Fin. Servs., Inc. v. Silverman*, 2009 U.S. Dist. LEXIS 65739, at *3-4, 2009 WL 2371536, at *1-2 (N.D. Ill. Jul. 30, 2009) (recognizing the validity of a similar waiver and stating that "requiring joinder of the borrower would eviscerate the purpose of the guaranty – to provide the lender with a simple means of compelling payment of the debt against the individual guarantors").

Second, Judge Bivins found that SKA is not a required party under Rule 19, because under Alabama law complete relief could be accorded among the existing parties to the action and because Kopelowitz had not demonstrated how the disposition of the action would impair or impede SKA's ability to protect any interest it alleges it might have.  "The court notes that the Guaranty specifically provides that the 'Guaranty is independent of the Loan or any obligations of the Borrower" and "Kopelowitz and SKA prospectively agreed to the possibility of MNO litigating against Kopelowitz in SKA's absence." (Doc. 26, PageID.219).

Finally, Judge Bivins found that Azalea Propco and Azalea Health are also not required parties, in that Kopelowitz had failed to show they had a legally protected interest relating to the subject matter of this action.  "[T]he Court is not convinced that the agreement in the Note to make SKA's right of setoff the "sole recourse" of Azalea Health and Propco with respect to the indemnity obligations gives Azalea Health and Propco a direct, substantial, and legally protectable interest in this action, which was brought against Kopelowitz for breaching the Guaranty prior to the existence of a "final non-appealable judgment" (or even a lawsuit) with respect to the indemnity obligations." (*Id.*, PageID.225).

On November 30, 2022, SKA, Azalea Propco, and Azalea Health moved to intervene under Rules 24(a) and (b).  (Doc. 29). In support of the motion, SKA,

Azalea Propco, and Azalea Health submitted a proposed answer and counterclaim,

seeking a declaratory judgment as follows:

> [MNO] … seeks payment on a Guarantee Agreement that is, in turn,
> contingent on SKA … failure to pay its obligations, if any, on the
> Promissory Note. Because certain damages and indemnity owed by
> MNO … to Azalea … and … Propco are due to be set off against the
> Promissory Note, SKA …. Obligations under the Promissory Note
> should be drastically reduced or have been satisfied.
>
> There exists an actual case or controversy between the parties about
> the amount owed on the Promissory Note, if any, which directly
> impacts the amount owed on the Guarantee Agreement originally
> made the basis of this suit.

(Doc. 30, PageID.270). Although not parties to the action, the Proposed

Intervenors then simultaneously filed a proposed motion to stay. (Doc. 29-1).

On January 5, 2023, Judge Kristi K. DuBose denied Kopelowitz's motion to

dismiss under Rule 19, adopting that portion of Judge Bivens' report finding that

Kopelowitz had waived the right to insist that MNO first litigate against SKA or

that other parties should be joined. Judge DuBose also found that the motion was

due to be denied because SKA, Azalea Propco, and Azalea Health had by that time

moved to intervene.

Also on January 5, 2023, Judge DuBose denied Kopelowitz's motion to stay,

adopting in large part the opposition to that motion filed by MNO. In that

opposition, MNO had argued that Kopelowitz waived the right to insist that MNO

first litigate with SKA, Azalea Propco, and Azalea Health. MNO had also again

argued that the Guaranty was a separate, independent obligation. The Proposed Intervenors attempt to place great significance on the fact that the district court later clarified its order, refraining from making any sort of finding as to SKA's rights or remedies. All the district court did, however, was to avoid reaching any issues beyond those presented by the motion at such an early stage of the case.

On January 12, 2023, Judge DuBose entered an order denying the motion to intervene. After reviewing in detail the law in this circuit on the interest required to intervene as a matter of right under Rule 24(a), Judge DuBose wrote that "an *economic* interest contingent on the outcome of *other* pending litigation is not a legally protective interest under Rule 24(a)(2) and is speculative" (emphasis supplied):

> [T]he contracts the non-parties identify are not at issue in this federal case and the non-parties do not assert as much. There is no litigation in this case about entitlement to indemnification or set off, or interpretation of those sections of the contracts. The non-parties merely assert that the right to collect, as set forth in the contracts, is at issue in this federal case. However, it is not.
>
> The personal Guaranty executed by Defendant Kopelowitz – guaranteeing SKA's debt under the Promissory Note – is absolute, unconditional, and a contractual relationship between Kopelowitz and MNO. This means that MNO may rightfully pursue its remedy against Kopelowitz as Guarantor without first seeking payment from SKA, as the Guarantor has made an "independent" obligation. [citations omitted]. And while the non-parties assert that the Guaranty somehow incorporates or is contingent on the non-parties rights under the Promissory Note, the PSA and OTA, this assertion is not supported by the plain language of the Guaranty. The proposed intervenor's

12

> have, at best, a speculative/contingent economic interest based on a
> possible indemnification judgment.

(Doc. 49, PageID.377).

As to permissive intervention under Rule 24(b), Judge DuBose noted that the Proposed Intervenors asserted the same grounds as they had for intervention as a matter of right. "Moreover, permissive intervention would likely delay and prolong the federal litigation, as the non-parties have made clear that a stay of the federal litigation, to pursue the indemnification claim, will be their request." Accordingly, Judge DuBose denied the motion to intervene in its entirety.

SKA, Azalea Propco, and Azalea Health have now filed this appeal.

Standard of Review

The denial of a motion to intervene as of right under Rule 24(a) of the Federal Rules of Civil Procedure is reviewed *de novo*. *Purcell v. Bankatlantic Financial Corp.*, 85 F.3d 1508, 1512 (11th Cir. 1996). The denial of permissive intervention under Rule 24(b) is reviewed for a clear abuse of discretion. *Id.* at 1513. This Circuit has previously explained that:

> If there is no right to intervene under rule 24(a), it is wholly
> discretionary with the court whether to allow intervention under Rule
> 24(b) and even though there is a common question of law or fact, or the
> requirement of Rule 24(b) are otherwise satisfied, the court may refuse
> to allow intervention.

*Id*. (citations omitted). "[O]ur task is not to determine whether the factors of Rule 24(b) were present, but is rather to determine whether the trial court committed a

clear abuse of discretion in denying the motion." *Worlds v. Department of Health and Rehabilitative Services, State of Fla.*, 929 F.2d 591, 595 (11th Cir. 1991) (citations and quotation marks omitted). This Court should affirm unless it determines the district court has made a clear error of judgment or has applied an incorrect legal standard. *SunAmerica Corp. v. Sun Life Assurance Co. of Canada*, 77 F.3d 1325, 133 (11th Cir. 1996).

## SUMMARY OF THE ARGUMENT

This lawsuit was brought by MNO against Kopelowitz only and is based solely on his absolute and unconditional guaranty. The focus of the Rule 24 intervention analysis is what interest the Proposed Intervenors may have in *that* specific claim. The Proposed Intervenors have failed to establish a sufficient interest to warrant either mandatory or permissive intervention.

First, the Proposed Intervenors' claimed interest in the underlying action rests largely on the indemnity and set-off provisions of the Note. This "interest," based entirely on the *possibility* of a *future* right to indemnity and set-off that is *contingent* upon the outcome of separate litigation, is not a "direct, substantial and legally protectable" interest. Rather, it is a mere economic and speculative interest that courts have repeatedly found insufficient to warrant intervention as a right.

From a more general perspective, the Proposed Intervenors' alleged interests do not arise from the Guaranty, which expressly establishes a distinct contractual relationship – and independent obligation – between Kopelowitz and MNO. Instead, the Proposed Intervenors' alleged "interests," generally speaking, are rooted in the larger transaction and other "related agreements." These are indirect and remote interests that are not at issue in the underlying action between MNO and Kopelowitz on the Guaranty, and, therefore, do not warrant intervention.

15

Second, even if the Proposed Intervenors could establish a legally protectable interest in the underlying action, they have failed to adequately show how their absence from the underlying case would impair their ability to protect such interest. Again, the interests the Proposed Intervenors seek to protect are not at issue in the underlying action. As such, no judgment or finding in the underlying action will preclude or impair their right to pursue and/or protect these interests in another action – which they have already done.

Third, the Proposed Intervenors also fail to show how or why Kopelowitz cannot adequately protect their alleged interests in the underlying action. Their argument in this regard rests largely on Kopelowitz's waiver of borrower defenses in the Guaranty. However, given the independent nature of the Guaranty from any interests of the Proposed Intervenors, the impact of the defense waiver – and the absence of the Proposed Intervenors – is inconsequential. Moreover, Kopelowitz, who is represented by the same counsel and is also the managing member of SKA, is well suited to advocate for the Proposed Intervenors' "interests" in the underlying action.

The Proposed Intervenors' argument for permissive intervention fails largely for the same reasons as set forth above. Additionally, their requested intervention would only delay the underlying case – as evidenced by their express desire to stay that case – and unduly prejudice MNO. As such, the Proposed Intervenors cannot

establish "clear abuse of discretion" by the district court necessary to overturn its

decision regarding permissive intervention.

## **ARGUMENT**

### I.    **The Trial Court Properly Denied Intervention of Right.**

#### A.    MNO does not challenge the Timeliness of Intervenors' Application to Intervene.

While the Proposed Intervenors have asserted many claims that are far from timely, MNO does not dispute the timeliness of their motion to intervene.

#### B.    The Intervenors Have No Protectable, Legal Interest in the Action Against Kopelowitz.

At the outset, this dispute should be put in proper context.  The Proposed Intervenors refer to all kinds of unproven claims relating to the condition of the nursing home they purchased.  While those claims will be addressed at the proper time in an appropriate forum, suffice it to say for now that MNO denies those claims, vigorously.  This was a commercial transaction between sophisticated parties, all of whom were represented by experienced counsel.  Kopelowitz is an experienced businessperson, with a direct or indirect interest in many nursing homes.  He has been involved in the acquisition of several other, similar facilities.  As one would expect, the transaction included an extensive due diligence and inspection period.

What is material for purposes of this appeal is the claim asserted by MNO in the underlying action, which was brought only against Kopelowitz and which rests solely on his absolute and unconditional obligation as a guarantor, and whether the

Proposed Intervenors can meet the requirements for intervention under Rule 24(a) with respect to *that* claim.

"Under Alabama law, '[a]n absolute guaranty is an unconditional undertaking by the guarantor to pay a debt at maturity if the principal does not.  Under such a guaranty, a creditor is under no obligation to pursue its remedy against the principal as a prerequisite to its right to recover from the guarantor.'"  *Piggily Wiggly Alabama Distrib. Co., Inc. v. Bowman Co.*, No. 2:12-CV-02079-JHE, 2014 WL 12749006 at *1 (N.D. Ala. Jun. 6, 2014), (quoting *Shur-Gain Feed Div. William Davies Co., Inc. v. Huntsville Prod. Credit Ass'n*, 372 So. 2d 1317, 1320 (Ala. Civ. App. 1979)).[2] Alabama law allows a creditor to sue a guarantor with no obligation to join the principal debtor.  *Prince v. Huliau*, No. 5:20-CV-0208-LCB, 2020 WL 3894009 (N.D. Ala. Jul. 10, 2020); *Crawford v. Chattanooga Savings Bank*, 203 Ala. 133, 135, 82 So. 163, 165 (1919) ("When the terms of the contract of guaranty render the guarantor absolutely liable for the payment of the principal obligation upon the default of the principal, … the guarantee ... is not bound to proceed against the principal, with diligence or otherwise, as a condition to enforcing the liability of the guarantor.").

In an action on an absolute and unconditional guaranty, alleged defenses of the borrower are not at issue.  *PR Leasing Co., Inc. v. Cowin Equipment Co., Inc.*, 611

---

[2]Section 19 of the Guaranty provides that it is to be governed by the law of Alabama.  (Doc. 1-2, PageID.26.)

So. 2d 232, 234 (Ala. 1992) (even though the principal contended that a set-off extinguished the principal's obligation, the claim against guarantor on an absolute and unconditional guaranty remained viable. "The defenses and claims of the principal, even if valid, 'are not defenses to [an] absolute and unconditional guaranty'") (internal citation omitted); *Government Street Lumber Co. v. AmSouth Bank, N.A.*, 553 So. 2d 68, 79 (Ala. 1989) (claims of tortious interference and negligence, among others, by the principal against creditor were not available to guarantor under an absolute and unconditional guaranty).

Having been unsuccessful in his attempts to require the district court to join SKA, Azalea Propco, and Azalea Health as necessary parties, Kopelowitz caused them to move to intervene under Rule 24, all claiming an "interest" in the case. For the reasons described below, that claim also falls short.

The Eleventh Circuit defines the "interest" required under Rule 24(a)(2) as a "direct, substantial and legally protectable" interest in the subject matter. *Georgia v. United States Army Corps of Eng'rs*, 302 F.3d 1242, 1249 (11th Cir. 2002). This Court has held that a legally protectable interest "is something more than an economic interest." *United States v. South Fla. Water Mgmt. Dist.*, 922 F.2d 704, 710 (11th Cir. 1991) (quotation marks and citation omitted). "What is required is that the interest be one which the substantive law recognizes as belonging to or being owned by the applicant." *Id.* (quotation marks and citation omitted). Because Rule 24(a)(2)

20

contains language that is identical to Rule 19(a)(1)(B), cases interpreting Rule 19 are also instructive. *See Lacroix v. Lee Cnty*, No. 2:18-cv-143-FtM-38CM, (M.D. Fla. Jul. 29, 2018) (noting that the definition of an "interest" required to compel joinder under Rule 19 has been interpreted in a fashion identical to Rule 24).

In *Ochs v. Hindman*, 984 F. Supp. 2d 903 (N.D. Ill. 2013), the court held that the maker of a note did not have an "interest" in a lawsuit against a guarantor under Rule 19, because the absolute and unconditional guaranty was a distinct contract. *Id*. at 910. The "contractual relationship at issue" in the suit was "the one between the guarantor, Defendant, and the creditor, Plaintiff." *Id.* The very nature of an absolute and unconditional guaranty of payment relieved the plaintiff from any obligation to litigate first with the borrower.

The same is true here. *See*, *e.g*., *Regions Bank v. Stewart*, No. 10-0145-M, 2010 WL 2496186 (S.D. Ala. Jun. 14, 2010) ("The Court finds that ZLM has failed to show that it has an interest in this action [under Rule 24(a)(2)]. Specifically, the Court notes that, under its terms, the Defendant's Guaranty is unconditional and absolute … that being so, [the creditor] may pursue its remedy against [the guarantor] without first seeking payment from [the principal].")

The basis for the Proposed Intervenors' alleged interest in this case is Section 4.6 of the Note. Section 4.6 provides in part as follows:

> [U]pon a final non-appealable judgment, [SKA] shall have the right to
> set-off against any amounts due under the Note with respect to all

21

amounts due in connection with (a) [MNO's] obligations to indemnify [Azalea Propco] under the PSA, and (b) [MNO's] obligations to indemnify [Azalea Health] under the OTA.

(Doc. 1-1, PageID.8-9.)    The Proposed Intervenors contend that MNO might, someday, be obligated to indemnify Azalea Propco and Azalea Health for certain claims under the PSA and OTA and that SKA might therefore, someday, be entitled to a setoff.

Section 4.6 does not create a legally protectable interest in the subject of this action.  Under Section 4.6 of the Note, Azalea Propco and Azalea Health must first have obtained *a "final non-appealable judgment"* before SKA, as borrower, could have claimed any right to a reduction in the amount due under the Note.  (Doc. 1-1, PageID.8.)  The Proposed Intervenors had no such judgment at the time of SKA's default.   Indeed, as the Court reads this, the Proposed Intervenors *still* have no judgment on any alleged indemnity obligation of MNO.    Despite closing this transaction almost two years ago, Azalea Propco and Azalea Health only recently filed a lawsuit against MNO, and then only after MNO filed this action against Kopelowitz.  They did not even make a formal demand for indemnification until after MNO filed this action.  As mentioned in the Statement of Facts, there is no provision in the Note that says SKA can fail to pay as agreed if it merely suspects MNO may some day in the future owe an indemnity obligation to Azalea Propco or Azalea Health.

As the district court appropriately recognized, "an economic interest *contingent* on the outcome of *other* pending litigation is not a legally protectible interest under Rule 24(a)(2) and is speculative." (Emphasis supplied.) *Mt. Hawley Ins. Co. v. Sandy Lake Props., Inc.*, 425 F.3d 1308, 1311 (11th Cir. 2005) ("[f]urther, Rigaud's interest is purely speculative because it is contingent upon his prevailing against Muria International and Sandy Lake Properties in the wrongful death action []"); *see also AAL High Yield Bond Fund v. Deloitte & Touche LLP*, 361 F.3d 1305, 1310-1311 (11th Cir. 2004) ("… to intervene as of right under Fed. R. Civ. P. 24(a)(2), a nonparty must have a 'direct,' 'substantial,' and 'legally protectable' interest in the action rather than a merely speculative or contingent interest[]" (citing *Brennan v. N.Y. City Bd. Of Ed.*, 260 F.3d 123, 139 (2nd Cir. 2001); *Typhoon Media Corp. v. CVS Pharmacy, Inc.*, 2013 WL 12090029, *3-4 (M.D. Fla. Aug. 22, 2013) ("'Purely economic interests do not support a motion to intervene as of right. *Mt. Hawley*, 425 F.3d at 1311 … a third party is not entitled to intervene as of right in an insurance-policy dispute when he is not a party to the insurance policy, even if the court's judgment in the insurance-policy dispute may affect the third party's ability to recover funds from the insured[,]" "a third-party creditor's claim [a judgment creditor's interest] that judgment against defendants would affect his ability to recover funds owed to him by defendants' company was 'purely economic' interest and thus not a legally protectible interest that warrants intervention[c]" and "a

judgment creditor's interest is purely economic, and by itself does not warrant intervention as a matter of right[]"); *CSpan Fin., LLC v. Blane*, 2012 WL 3639051, *2 (S.D. Fla. Aug. 23, 2012) (third-party creditor's claim that judgment against defendants would affect his ability to recover funds owed was "purely economic" and not a legally protectible interest warranting intervention); *Laube v. Campbell*, 215 F.R.D. 655, 657 (M.D. Ala. Mar. 27, 2003) ("[a]n interest satisfying the other requirements of Rule 24(a)(2) must be a 'direct, substantial, legally protectable interest in the proceeding…. [The proposed intervenors] must be at least … real part[ies] in interest in the transaction which is the subject of the proceeding[]' *Chiles*, 865 F.2d at 1213-1214 …. [t]he 'focus … …. Is whether the intervenor has a legally protectable interest in the litigation[]' *Chiles*, 865 F.2d at 1211 …. [i]nterests that are contingent upon some future events and which are "purely a matter of speculation" are not "the kind of protectable interest … necessary to support intervention as of right." *ManaSota-88, Inc. v. Tidwell*, 896 F.2d 1318, 1322 (11th Cir. 1990) (proposed intervenors' interest was 'purely a matter of speculation' at the time of their motion and though proposed intervenors claimed that the outcome of the case would have a profound impact upon its members, 'such a generalized grievance' did not state an interest sufficient to grant intervention as of right)[]"); *Acceptance Indemn. Ins. Co. v. Southeastern Forge, Inc.*, 209 F.R.D. 697, 700-701 (M.D. Ga. 2002) ("[t]he Court finds that the possibility that JSL may be subject to a future claim for indemnification

does not satisfy Rules 24(a)'s requirements that an intervenor of right must demonstrate a legally protectable interest in the proceedings …." (emphasis in original)).

Indemnification, or the possibility of indemnification, is not at issue in this action. This case is about an absolute and unconditional guaranty – a contract that Kopelowitz and SKA both agreed and acknowledged was an independent obligation. That Guaranty specifically provides that it "is independent of the Loan or any obligations of the Borrower." Moreover, SKA prospectively agreed to the possibility of MNO litigating against Kopelowitz in SKA's absence. As the district court found, "while the non-parties assert that the Guaranty somehow incorporates or is contingent on the non-parties rights under the Promissory Note, the PSA and OTA, this assertion is not supported by the plain language of the Guaranty."[3]

Azalea Propco and Azalea Health's alleged interest in this action is even more "contingent" and "economic" than SKA's. There is nothing in this record that shows how a reduction in the amount owed by SKA would, in turn, provide a direct, contractual benefit to Azalea Propco and Azalea Health. Moreover, as Magistrate Judge Bivins appropriately observed in her Report and Recommendation, "the Court

---

[3] The Proposed Intervenors go so far as to claim some status akin to a third-party beneficiary among the parties as supporting a finding of a legal interest in this case. However, even if third-party beneficiary status were a factor to consider in this analysis, the Proposed Intervenors are not, as a matter of fact or law, a third-party beneficiary of the Guaranty, the contract at issue in this case.

is not convinced that the agreement in the Note to make SKA's right of setoff the 'sole recourse' of Azalea Health and Propco with respect to the indemnity obligations gives Azalea Health and Propco a direct, substantial, and legally protectable interest in this action, which was brought against Kopelowitz for breaching the Guaranty prior to the existence of a "final non-appealable judgment" (or even a lawsuit) with respect to the indemnity obligation."

C.  The Intervenors' Ability to Protect Their Interests is Not Impaired.

Even if the Proposed Intervenors could show a legally protectable interest in the action, they have not conclusively established how the disposition of this case in their absence would impair their ability to protect that interest. *See* Fed. R. Civ. P. 24(a)(2). While not addressed by the district court in its order denying intervention, this issue was directly addressed in the Recommendation and Report prepared by Magistrate Judge Bivins on Kopelowitz's motion to dismiss. (Doc. 26 at 15-16).  Kopelowitz had moved to dismiss the case under Rule 12(b)(7), claiming that MNO had failed to join necessary parties under Rule 19.  Courts in this Circuit have found that Rule 19(a)(1)(B)(i), which also requires an analysis of whether a third party's ability to protect an "interest" in a case might be impaired, does not require joinder of the principal debtor in similar circumstances. *See Branch Banking & Tr. Co. v. Amac Three, LLC*, 2014 U.S. Dist. LEXIS 203032 at *19, 2014 WL 12737625, at *6 (N.D. Ga. Jan. 24, 2014) ("Although Amac Three

has an interest in the subject of this action, the disposition of this action in its absence will not in any way impair its ability to protect its own interest. As a non-party, Amac Three would not be bound by a judgment in this action in favor of BB&T and would not be foreclosed from challenging BB&T's decision to collect on the Notes in a separate action."); *Amason & Assocs., Inc. v. Columbus Land Dev., LLC*, 2014 WL 467509, at *5 (N.D. Ala. Feb. 5, 2014) ("Because Columbus LLC is not a party to this suit and will not have the opportunity to litigate its liability under the Construction Contract, it will not be legally bound by a judgment under the principles of res judicata or collateral estoppel. Furthermore, a judgment in this action will not, as a practical matter, impair or impede Columbus LLC's ability to protect its interests. Columbus LLC's interest in this action relates to the underlying Construction Contract, not the Guaranty. A judgment against the Guarantor Defendants on the Guaranty would have no effect, practical or otherwise, on Columbus LLC. As a result, its interest in this action would not be prejudiced by its absence as a party.") (internal citation omitted); *Piggily Wiggily Alabama Distrib. Co., Inc. v. Bowman Co.*, No. 2:12-CV02079-JHE, 2014 WL 12749006 at *1 (N.D. Ala. Jun. 6, 2014) (in suit against guarantor on absolute guaranty, finding that the principal would not be impeded from protecting its interest if dismissed from the case); *Prince v. Huliau*, No. 5:20-CV0208-LCB, 2020 WL 3894009, at *4 (N.D. Ala. Jul. 10, 2020).

27

As set forth above, the "interest" the Proposed Intervenors claim in this action derives from SKA's allegation that it might someday be entitled to a set-off under the Note, an allegation based in turn on Azalea Propco's and Azalea Health's contention that they might someday be entitled to indemnification under the PSA and OTA. Again, those claims and those two agreements are not at issue in this litigation. *See PR Leasing Co., Inc.*, 611 So. 2d at 234 (Ala. 1992); *Gov't. Street Lumber Co.*, 553 So. 2d at 79. The district court will not decide any issue concerning the Proposed Intervenors' claims under the PSA and OTA. A judgment against Kopelowitz on his absolute and unconditional guaranty – the only contract at issue in this litigation – would not preclude the Proposed Intervenors from seeking to vindicate their alleged interest in a separate action, which is exactly what they have done.

The Proposed Intervenors further speculate that judicial construction of the Note in this action "may" have stare decisis effect on any subsequent claim by them regarding SKA's obligations under the Note.[4]  In the context of a motion to intervene under Rule 24, this Circuit has held that "the potential for negative stare decisis

_____

[4] Proposed Intervenors cite *Ex parte Howell*, 447 So. 2d 661 (Ala. 1984) in support of the "purpose" behind intervention. However, the *Howell* Court expressly noted that such language was "*obiter dictum*" from a previous Alabama Supreme Court decision setting forth the "guidelines for the allowance of intervention in the ordinary workmen's compensation case." *Id* at 664. *Ex parte Howell* and the earlier case both involved subrogation rights of insurance carriers in the workmen's compensation context, an analysis that does not apply here.

effects does not automatically grant . . . the right to intervene" unless the practical impairment facing the putative intervenor is "significant."  *See Stone v. First Union Corp.*, 371 F.3d 1305, 1310 (11th Cir. 2004) (citing *Chiles v. Thornburgh*, 865 F.2d 1197 (11th Cir. 1989)). Considering whether the practical impairment facing a putative intervenor was "significant" for the purposes of this analysis, one federal court in this Circuit held that "the relevant question is whether resolution of the main suit favorably to plaintiff will render the interest claimed by [the intervenor] worthless for all practical purposes." *CSX Transp., Inc. v. Georgia Pub. Serv. Comm'n*, 944 F. Supp. 1573, 1578 (N.D. Ga. 1996). *See also Atlantis Dev. Corp. v. United States*, 379 F.2d 818, 828 (5th Cir. 1967) ("If in its claim against the defendants in the main suit these questions [of law] are answered favorably to the [plaintiff's] position, the claim of [putative intervenor] for all practical purposes is worthless."); *Ciba Specialty Chemicals Corp. v. Tensaw Land & Timber Co.*, 233 F.R.D. 622, 628 n.6 (S.D. Ala. 2005) (citing the CSX court's "worthless for all practical purposes" analysis with approval).

Here, it can hardly be said that a judgment against Kopelowitz on the Guaranty would render the Proposed Intervenors' right to assert claims against MNO or to seek a reduction in the amount due under the Note "worthless." As previously established, an absolute and unconditional guaranty is a distinct contract. The contractual relationship at issue here is the one between Kopelowitz and MNO, no

29

one else. The Proposed Intervenors have not, and cannot, establish a "significant" risk of practical impairment due to potential negative stare decisis stemming from a case in which they are not a party, SKA's defense (if any) to enforcement of the Note will not be heard, and their alleged claims for indemnification will not be decided.

### D. Kopelowitz Can Adequately Protect the Intervenors' Interests.

Finally, to the extent Proposed Intervenors have any interest in this action, they have failed to demonstrate that such an interest would be ***inadequately*** represented by Kopelowitz, who is the manager and sole member of SKA. *See Lloyd Noland Found., Inc. v. Tenet Healthcare Corp.*, 2001 U.S. Dist. LEXIS 28038, at *14, 2001 WL 37124708, at *5 (N.D. Ala. Jun. 20, 2001) (finding that corporation was not a necessary party despite the fact that its interests were indirectly implicated when the corporation "merely is a third-party beneficiary of the guaranty agreement between plaintiff and defendant[,] Defendant has every incentive to prove that [the corporation] did not breach the [underlying] agreement[, and] because it owns and controls [the corporation], defendant has access to all of the resources available to [the corporation]").

Proposed Intervenors contend that, because Kopelowitz has waived all defenses that SKA may have to the Note, Kopelowitz cannot adequately protect their interest.  A waiver of defenses in a guaranty agreement is indeed enforceable under Alabama law.  *See Gov't St. Lumber Co. v. AmSouth Bank, N.A.*, 553 So.2d

68, 79 (Ala. 1989); *Branch Banking & Tr. Co. v. Broaderip*, 2011 U.S. dist. LEXIS 89652, at *23-24, 2011 WL 3511774, at *9 (S.D. Ala. Aug. 11, 2011).  Without a "final, non-appealable judgment," SKA's allegation of a possible setoff is a defense that Kopelowitz has indeed waived.  *Id*.

That waiver, however, does not impact the Proposed Intervenors.  The legal impact of the waiver as to Kopelowitz is the same regardless of the Proposed Intervenors' presence or absence from the case.  If the district court agrees that the defense has been waived, then the Proposed Intervenors surely have no interest in this case to protect.  A decision on Kopelowitz's Guaranty is just that – a decision on his absolute and unconditional Guaranty, with no arguable impact on SKA's ability to argue setoff in the state court action it filed.  If the district court disagrees and permits Kopelowitz to argue in his own defense that, despite the plain language of the Note and the absence of a "final non-appealable judgment," there has been no "Event of Default" as defined in Section 6 of the Note, then Kopelowitz "has every incentive" to argue the very position the Proposed Intervenors seek to protect.  He is, after all, represented by the same counsel and, as managing member of SKA, would have access to the same resources as SKA.

As for Proposed Intervenors' constant references to their defenses based on the "related agreements," presumably a reference to the OTA and PSA, those agreements are not at issue in this case.  The hypothetical existence of any such

31

alleged defenses do not impact Kopelowitz's liability under the Guaranty, and they are not "incorporated by reference" into the Note. Kopelowitz is not a party to those agreements.

## II.    __The Trial Court Properly Denied Permissive Intervention.__

The Proposed Intervenors' appeal of the district court's denial of permissive intervention is, to put it mildly, a stretch. Even if the Proposed Intervenors could meet the requirements of Rule 24(b), the district court's order denying permissive intervention does not amount to a "clear abuse of discretion." There is no indication in the court's order that it applied an incorrect legal standard or made a clear error of judgment. *Purcell*, 85 F.3d at 1513. As this Circuit has made clear, its task "is not to determine whether the factors of Rule 24(b) were present, but is rather to determine whether the trial court committed a clear abuse of discretion in denying the motion." *Worlds*, 929 F.2d at 595.

### A. There are No Common Questions of Law and Fact Sufficient to Warrant Intervention.

The Proposed Intervenors dedicated little analysis to this argument before the district court and rested largely upon the alleged "interests" and alleged commonalities discussed above. For the same reasons these arguments failed to satisfy the standard for intervention as of right, they failed to supply grounds for permissive jurisdiction. (Doc. 49, PageID.378).

The Proposed Intervenors' proposed counterclaim is a single count for declaratory judgment seeking a determination that the Note is due to be set off by the damages they seek to be awarded in the pending State Court Action, even though they have no "final, non-appealable judgment."  For the reasons discussed at length above, this claim is wholly distinguishable, factually and legally, from MNO's claim against Kopelowitz on the Guaranty.  *Buckley Towers Condominium, Inc. v. QBE Ins. Corp.*, 2008 WL 11318164, at *5 (S.D. Fla. Nov. 4, 2018) (denying request for permissive intervention where "[t]he Trustee's claim for default under the mortgage and note against this Plaintiff shares not a single common question of law or fact with this insurance coverage dispute. They are indeed wholly distinct claims that have no bearing on one another. Disposition of this action, for or against this Plaintiff, will not impair the Trustee's default action against this Plaintiff in any way whatsoever.").

SKA's alleged defense to enforcement of the Note is not at issue in this case. *See Ageless Foundation, Inc. v. Quincy Investments, Corp.*, 2006 WL 8432667, at *5 (S.D. Fla. Aug. 15, 2006) (denying permissive intervention where putative intervenor alleged that his proposed claims presented common questions because they were identical to plaintiff's claims but were "based on the incorrect belief" that he was entitled to seek such relief); *Caballero v. Ejercito de Liberacion Nacional*, 2019 WL 11505371, at *3 (S.D. Fla. Jun. 27, 2019) (denying request for permissive intervention where instant action did not share any common questions of law or fact

with putative intervenors' alleged interests because such interests were only prospective and not at issue in the current litigation). A general interest in the larger transaction underlying this dispute is "not enough" to warrant permissive intervention. *Buckley Towers*, 2008 WL 11318164, at *5 ("Simply having an interest in the same property or transaction that is the subject matter of the litigation is not enough. The Rule is specific. The intervenor's claim must share a "common question of law or fact" with the issues being litigated in this action."). No common questions of law or fact exist here to warrant permissive intervention.

### B. Intervention Will Unduly Prejudice and Delay the Adjudication of the Rights of the Parties to the Action.

Permissive intervention under Rule 24(b) is appropriate only when the intervention will not unduly prejudice or delay the adjudication of the rights of the original parties. *Georgia v. U.S. Army Corps of Engineers*, 302 F.3d 1242, 1250 (11th Cir. 2002). Allowing intervention here would unnecessarily delay this simple contract action against the guarantor when neither the claims nor defenses of a borrower, much less of Azalea Propco and Azalea Health, are at issue. To compound this prejudice and delay, Proposed Intervenors state in the Motion to Intervene that they seek a stay of this case to allow the state court to address their alleged defense to enforcement of the Note. (Doc. 29, PageID.237).

Allowing Proposed Intervenors to circumvent Kopelowitz's clear obligations under his Guaranty – obligations that he voluntarily undertook and are material

terms of this negotiated transaction – would prejudice and delay the adjudication of the rights of MNO, especially given that the Proposed Intervenors seek intervention to ask the district court to stay all proceedings in favor of their later filed state court case.[5]  *See Gen. Elec. Bus. Fin. Servs., Inc. v. Silverman*, 2009 U.S. Dist. LEXIS 65739, at *3-4, 2009 WL 2371536, at *1-2 (N.D. Ill. Jul. 30, 2009) ("requiring joinder of the borrower would eviscerate the purpose of the guaranty – to provide the lender with a simple means of compelling payment of the debt against the individual guarantors").  This case has been delayed enough by the procedural mischief of the Proposed Intervenors and Kopelowitz, and the district court's denial of permissive intervention does not amount to a "clear abuse of discretion."

## CONCLUSION

For all the foregoing reasons, the district court's order denying intervention should be affirmed.  The Proposed Intervenors have not established that they are entitled to intervene as of right under Rule 24(a), and they have not shown that the district court's order denying permissive intervention constitutes a clear abuse of discretion.  This appeal should be seen for what it is:  another attempt by Kopelowitz to avoid making good on his Guaranty while he forces MNO to engage

---

[5] The Proposed Intervenors' assertion that Kopelowitz's previously filed motion for stay in favor of the State Court Action (Doc. 24) somehow supports their permissive intervention argument is unpersuasive and surprising given the fact that the district court denied that motion. (Doc. 48).

in time consuming and expensive litigation with the borrower over its alleged claims and defenses.  If this intervention were granted, it would subvert the very purpose of an absolute and unconditional guaranty, and it would re-write the terms of a remedy that Kopelowitz himself negotiated.

Respectfully submitted,

/s/ Archibald T. Reeves, IV
Archibald T. Reeves, IV
Alabama Bar No. ASB-2720-V84A
McDowell Knight Roedder & Sledge,
L.L.C.
11 North Water Street, Suite 13290
Mobile, Alabama 36602
Telephone: (251) 432-5300
Facsimile: (251) 432-5303
Email: areeves@mcdowellknight.com


/s/ James P. Pewitt
James P. Pewitt
Alabama Bar No. ASB-7642-P62J
James P. Pewitt, LLC
Two North Twentieth
2 20th Street North, Suite 925
Birmingham, Alabama 35203
Telephone: (205) 874-6686
Email:  jim@jamespewitt.com

Counsel for Appellee Mobile Nursing
Operations, LLC

## CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMITATIONS, TYPEFACE REQUIREMENTS, AND TYPE STYLE REQUIREMENTS

1.      This document complies with the type-volume limitation of Fed. R. App. P. 27(d)(2)(A) because this document contains 8,016 words, excluding the parts of the document exempted by Fed. R. App. P. 32(f) as counted by the word count function of Microsoft Word for Microsoft 365 Version 2302 word processing software.

2.      This document complies with the typeface requirements of Fed R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because this document has been prepared in a proportionately spaced typeface using the Microsoft Word for Microsoft 365 Version 2302 word processing software in 14-point Times New Roman font.

*/s/ Archibald T. Reeves, IV*
Archibald T. Reeves, IV
Alabama Bar No. ASB-2720-V84A
McDowell Knight Roedder
    & Sledge, L.L.C.
11 North Water Street, Suite 13290
Mobile, Alabama 36602
Telephone: (251) 432-5300
Facsimile: (251) 432-5303
Email: areeves@mcdowellknight.com

*/s/ James P. Pewitt*
James P. Pewitt
Alabama Bar No. ASB-7642-P62J
James P. Pewitt, LLC

37

Two North Twentieth
2 20th Street North, Suite 925
Birmingham, Alabama 35203
Telephone: (205) 874-6686
Email:  jim@jamespewitt.com

Counsel for Appellee Mobile Nursing
Operations, LLC

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on August 7, 2023, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following:

M. Warren Butler
Amber M. Whillock
Weathers Bolt
STARNES DAVIS FLORIE LLP
11 N. Water Street
RSA Battle House Tower, Suite 20290
Mobile, AL 36633-1548
wbutler@starneslaw.com
awhillock@starneslaw.com
wbolt@starneslaw.com

/s/ Archibald T. Reeves, IV
Archibald T. Reeves, IV<br>
Alabama Bar No. ASB-2720-V84A<br>
McDowell Knight Roedder & Sledge, L.L.C.<br>
11 North Water Street, Suite 13290<br>
Mobile, Alabama 36602<br>
Telephone: (251) 432-5300<br>
Facsimile: (251) 432-5303<br>
Email: areeves@mcdowellknight.com

/s/ James P. Pewitt
James P. Pewitt<br>
Alabama Bar No. ASB-7642-P62J<br>
James P. Pewitt, LLC<br>
Two North Twentieth<br>
2 20th Street North, Suite 925<br>
Birmingham, Alabama 35203<br>
Telephone: (205) 874-6686<br>
Email:  jim@jamespewitt.com

Counsel for Appellee Mobile Nursing Operations, LLC